```
              UNITED STATES DISTRICT COURT
               DISTRICT OF MASSACHUSETTS

CHARLES COUGHLIN, JR. and      )
STAVROULA BOURIS,              )
         Plaintiffs,           )
                               )
         v.                    )  C.A. No. 10-10203-MLW
                               )
                               )
TOWN OF ARLINGTON,             )
ARLINGTON SCHOOL COMMITTEE,    )
NATHAN LEVENSON, TRACY BUCK,   )
and JEFFREY THIELMAN           )
     Defendants.               )
```

<u>MEMORANDUM AND ORDER</u>

WOLF, D.J.                                    December 19, 2011

I. SUMMARY

On February 8, 2010, plaintiffs Charles Coughlin, Jr., and Stavroula Bouris filed a forty-count Complaint against defendants Town of Arlington, Arlington School Committee (the "School Committee"), Nathan Levenson, Tracy Buck, and Jeffrey Thielman. In essence, plaintiffs allege that their rights were infringed in the course of their respective terminations from Ottoson Middle School in the Arlington School District after it was discovered that they were engaged in a sexual relationship. On April 6, 2010, the court referred the case to the Magistrate Judge for pretrial purposes. Subsequently, the School Committee, Levenson, Buck, and Thielman filed motions to dismiss. On January 31, 2011, the Magistrate Judge issued a Report and Recommendation (the "Report") on the motions.[1] Plaintiffs timely filed objections to portions of the Report.

---

[1]The Report is erroneously dated January 31, 2010.

Defendants did not file objections but did respond to plaintiffs' filing.[2] Pursuant to Federal Rule of Civil Procedure 72(b), the court is accepting part of the Report and rejecting part of it.

Plaintiffs' claims are based principally on defendants Levenson and Buck accessing Bouris's personal and school email accounts and the subsequent dissemination by Levenson, Buck, and Thielman of intimate personal messages between Bouris and Coughlin that were found in those accounts. In 2007, plaintiffs filed suit in the Middlesex Superior Court seeking, among other things, to enjoin the dissemination of at least some of those email messages. The Superior Court concluded that the emails at issue in the case were public records and, therefore, that plaintiffs had no privacy rights in them. The Superior Court denied plaintiffs' request for an injunction.

As described in detail below, the Magistrate Judge determined that the Superior Court decision precluded certain claims in this case. The Magistrate Judge recommends dismissing plaintiffs' claims against the School Committee on the basis of claim preclusion

---

[2]As described more fully below, defendant Levenson included objections to portions of the Report in his Response to Plaintiffs' Objections to Report and Recommendation. However, because Levenson did not file objections within fourteen days of being served with the Report, his objections are not timely and the court is not required to conduct a de novo review of the portions of the Report to which he objects. See Fed. R. Civ. P. 73(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.").

because plaintiffs could have, but did not, raise their civil rights claims against the School Committee in connection with their case in the Middlesex Superior Court. The court is adopting that recommendation.

The Magistrate Judge also concluded that the Superior Court held that plaintiffs have no privacy rights in any of the emails at issue in this case, regardless of whether they were obtained from Bouris's school email account or her personal account. Accordingly, the Magistrate Judge recommends dismissing all of plaintiffs' claims that are based on plaintiffs having privacy rights in the emails at issue in this case: plaintiffs' claims under 42 U.S.C. §1983 alleging infringements of their constitutional privacy rights; plaintiffs' claims under the Massachusetts privacy statute, M.G.L. c. 215, §1B; and plaintiffs' claims against Buck for interfering with plaintiffs' advantageous business relations. However, the court finds that it is not possible to determine that the Superior Court's holding was broad enough to encompass messages obtained from Bouris's personal email account. Accordingly, the court is adopting the Report only insofar as it recommends precluding plaintiffs from claiming privacy rights in Bouris's school email accounts. As a result, the court is not adopting the Magistrate Judge's recommendations with regard to the foregoing claims. The motions to dismiss are being denied with regard to plaintiffs' claims under the Massachusetts privacy statute and

their claims against Buck for interfering with their advantageous business relations. However, because there is no clearly established constitutional right to privacy of the sort plaintiffs claim, the court is dismissing plaintiffs' privacy claims under §1983 on the basis of qualified immunity.

Plaintiffs also allege that Buck defamed them. The Magistrate Judge recommends allowing Buck's motion to dismiss the defamation claims against her. The court is not adopting the recommendation to dismiss the claims against Buck because the court finds that plaintiffs have plausibly pled that Buck acted in concert with Levenson, who, plaintiffs have adequately alleged, acted with malice.

Next, plaintiffs claim that Levenson, Buck, and Thielman intentionally inflicted emotional distress on plaintiffs, in essence, by accessing and disseminating their personal email communications. The Magistrate Judge recommends dismissing these claims. However, because the court concludes that plaintiffs have plausibly pled extreme and outrageous conduct and sufficient emotional distress, the court is not adopting this recommendation.

Levenson filed untimely objections to portions of the Report that recommend denying his motion to dismiss with regard to several claims against him. Although the court is not required to engage in de novo review of Levenson's untimely objections, the court has reviewed the Report and is adopting the Magistrate Judge's

recommendations with regard to these claims. Accordingly, the court is not dismissing the claims against Levenson alleging unconstitutional harm to plaintiffs' reputations under §1983; defamation; violations of the Massachusetts Civil Rights Act, M.G.L. c. 12, §11I; and interference with plaintiffs' advantageous business relations.

Finally, no objections have been filed with regard to portions of the Report that recommend dismissing several of plaintiffs' claims. These include Coughlin's claim against Thielman for violating the Massachusetts Civil Rights Act; plaintiffs' claims against Thielman for interfering with plaintiffs' advantageous business relations; and plaintiffs' claims under §1983 that Levenson, Buck, and Thielman retaliated against them for engaging in protected speech, and that Buck and Thielman harmed plaintiffs' reputations. The court is adopting the Magistrate Judge's recommendation to dismiss these claims.


II. FACTUAL BACKGROUND

The Report, which is attached to this Memorandum and Order, provides a thorough and accurate summary of the facts alleged in the Complaint. Thus, the court highlights only the most relevant facts here, reserving others for discussion below as relevant. For purposes of the motions to dismiss, the court is taking the facts alleged in the Complaint as true. See Rodriquez-Ortiz v. Margo

Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007).

Plaintiffs were employed at Ottoson Middle School in the Arlington School District. Coughlin taught technology courses, and Bouris was the principal. See Compl. ¶¶11, 13. In 2005, the School Committee hired Levenson as Superintendent of the school district. Id. ¶15. Soon thereafter, tensions began to mount between Levenson and Bouris. See id. ¶17. Levenson attempted to convince Bouris to resign by suggesting that her career might be ruined if a false rumor were started "regarding the fondling of a child." See id. Levenson also decided not to renew Bouris's contract in 2007, which led to a public outcry. See id. at ¶18. As part of the protest, during a School Committee meeting Coughlin revealed that Levenson had lied on his resume. See id. at ¶20. Bouris's contract subsequently was renewed but, according to the Complaint, Levenson then commenced a campaign against Bouris and Coughlin. See id. at ¶22.

Levenson began monitoring Bouris's school email account in mid-2007. Id. at ¶25. Buck, who was a network technician for the school district, also participated in this monitoring. See id. at ¶¶9, 27. She had previously received an anonymous note asserting that plaintiffs were engaged in an improper relationship. Id. at ¶26. Levenson and Buck printed email messages from Bouris's school account. Id. at ¶27. Within those messages, they found the credentials for a personal, non-school email account belonging to

-6-

Bouris. Id. Levenson and Buck accessed the personal account.[3] The school and personal emails included explicit messages between Bouris and Coughlin, but the personal account messages were "more blatant." Id. at ¶34. Levenson later received an anonymous package containing printed copies of emails from Bouris's school and personal accounts. See id. at ¶30. The email messages were used as a basis to terminate plaintiffs. See id. at ¶¶41, 42.

Additionally, in July, 2007, Thielman, a member of the School Committee, released both the school and personal emails to the press, along with allegations that plaintiffs had committed forgery. See id. at ¶¶10, 39. Levenson also accused plaintiffs of forgery to members of the community. Id. The Complaint does not describe the forgery allegation in any detail.

As this was happening, several media entities filed public records requests to obtain copies of the emails.[4] In August, 2007, plaintiffs filed a three-count complaint against a non-existent entity, "Arlington Public Schools," and two John Doe defendants in the Middlesex Superior Court (the "prior action" or "Superior Court case"). See Def. Arlington Sch. Comm.'s Mem. of Law in Supp. of Its

_____

[3]For purposes of this Memorandum and Order, "school email account" will refer to Bouris's email account maintained by her employer, the school, and "personal email account" will refer to her personal account, which was not maintained by the school.

[4]The facts of this paragraph are taken from Coughlin v. John Doe, No. 07-3100 (Mass. Super. Ct. Dec. 11, 2007). As described below, the court is taking notice of the case for res judicata purposes.

Mot. to Dismiss, Exhibit A (the "Superior Court Complaint"). In Count III, plaintiffs sought to enjoin the release of the emails. See Superior Court Complaint ¶¶35, 39; Def. Arlington Sch. Comm.'s Mem. of Law in Supp. of Its Mot. to Dismiss, Exhibit B (Coughlin v. John Doe, No. 07-3100 (Mass. Super. Ct. Dec. 11, 2007) (the "Superior Court Decision")). The Superior Court denied plaintiffs' request for injunctive relief on the basis that the emails at issue were public records.[5]

On February 3, 2010, the parties entered into a stipulation of dismissal of the Superior Court case. See Def. Arlington Sch. Comm.'s Mem. of Law in Supp. of Its Mot. to Dismiss, Exhibit C. Plaintiffs filed the Complaint in the instant case on February 8, 2010, naming the Town of Arlington, the School Committee, Levenson, Thielman, and Buck as defendants.


III. MOTIONS TO DISMISS

A. Organization of the Complaint

Plaintiffs' Complaint includes forty counts organized into eight categories of claims. In Counts 1 and 2, plaintiffs allege that the Town of Arlington was negligent in its supervision of Levenson. See M.G.L. c. 258, §2. Counts 3 through 6, and 9 through 14 allege federal constitutional claims against each individual

---

[5]As described in detail below, the parties contest whether both the school and personal emails were at issue in the Superior Court Decision.

defendant pursuant to 42 U.S.C. §1983. Counts 7 and 8 allege §1983 claims against Levenson in his capacity as Buck's supervisor. In Count 15, Bouris alleges that Levenson violated the Massachusetts Civil Rights Act (the "MCRA") by interfering with her state and federal constitutional rights by threats and intimidation. See M.G.L. c. 12, §11I.[6] Coughlin sets out a similar claim against Thielman in Count 16. Counts 17 through 22 allege that each individual defendant invaded plaintiffs' privacy in violation of M.G.L. c. 214, §1B. Counts 23 through 28 allege defamation against the individual defendants. Counts 29 through 34 set out claims against the individual defendants for interfering with plaintiffs' advantageous business relations (the "IABR" claims). Finally, in Counts 35 through 40, plaintiffs allege that the individual defendants intentionally inflicted emotional distress on them (the "IIED" claims).

B. Discussion

Rule 72(b)(3) of the Federal Rules of Civil Procedure requires the court to review "de novo any part of the magistrate judge's disposition that has been properly objected to." Objections may be

---

[6]"In examining Mass. Gen. Laws ch. 12 §§ 11H, 11I, the Massachusetts Supreme Judicial Court held that the 'Legislature intended to provide a remedy under G.L. c. 12, §11I, coextensive with 42 U.S.C. §1983, except that the Federal statute requires State action whereas its State counterpart does not.' Batchelder v. Allied Stores Corp., 393 Mass. 819, 822-23 (1985). Another difference is the requirement that threats, intimidation, or coercion accompany the violation of rights." Kennedy v. Town of Billerica, 502 F. Supp. 2d 150, 156-56 (D. Mass. 2007).

filed within fourteen days of being served with a Report and Recommendation. See Fed. R. Civ. P. 72(b)(2). Only the School Committee, Levenson, Thielman, and Buck filed motions to dismiss. Accordingly, Counts 1 through 4, which allege claims against the Town of Arlington, are not at issue in this Memorandum and Order. The Report recommends that some of the remaining counts should be dismissed, and that some should survive.

     1. <u>Timely objections by plaintiffs</u>

Plaintiffs timely filed objections to portions of the Report, entitling them to de novo review.

     a. <u>The motion to dismiss standard</u>

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "take all factual allegations as true and . . . draw all <u>reasonable</u> inferences in favor of the plaintiff." <u>Rodriguez-Ortiz v. Margo Caribe, Inc.</u>, 490 F.3d 92, 96 (1st Cir. 2007); <u>see also</u> <u>Maldonado v. Fontanes</u>, 568 F.3d 263, 266 (1st Cir. 2009). The court must "neither weigh[] the evidence nor rule[] on the merits because the issue is not whether the plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims." <u>Day v. Fallon Cmty. Health Plan, Inc.</u>, 917 F. Supp. 72, 75 (D. Mass. 1996). A motion to dismiss should be denied if a plaintiff has shown "a plausible entitlement to relief." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 559 (2007); <u>see also</u> <u>Rodriguez-Ortiz</u>, 490 F.3d at 95-96 (applying

the <u>Bell Atl.</u> standard to a claim under the Private Securities Litigation Reform Act); <u>Morales-Tanon v. P.R. Elec. Power Auth.</u>, 524 F.3d 15, 18 (1st Cir. 2008) (applying the <u>Bell Atl.</u> standard to a claim under 42 U.S.C. §1983).

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard does not require "detailed factual allegations," but does require "more than labels and conclusions . . ., a formulaic recitation of the elements of a cause of action will not do . . . ." <u>Bell Atl.</u>, 550 U.S. at 555. A court may disregard "bald assertions, unsupportable conclusions, and opprobrious epithets." <u>In re Citigroup, Inc.</u>, 535 F.3d 45, 52 (1st Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is <u>plausible</u> on its face." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009) (emphasis added). "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" <u>Id.</u> (quoting <u>Bell Atl.</u>, 550 U.S. at 557).

Ordinarily, a court will not consider documents outside of the pleadings in a  motion to dismiss. <u>Rivera v. Centro Medico de Turabo, Inc.</u>, 575 F.3d 10, 15 (1st Cir. 2009); <u>Watterson v. Page</u>, 987 F.2d 1, 3 (1st Cir. 1993).  From this rule, the First Circuit

makes a "narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiff's claim; or for documents sufficiently referred to in the complaint." <u>Watterson</u>, 987 F.2d at 3-4; <u>Beddall v. State St. Bank & Trust, Co.</u>, 137 F.3d 12, 16-17 (1st Cir. 1998) (When "a complaint's factual allegations are expressly linked to – and admittedly dependent upon – a document (the authenticity of which is not challenged) that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).").

b. <u>Claim preclusion (Counts 5 – 6)</u>

The Magistrate Judge recommends dismissing Counts 5 and 6, which allege §1983 claims against the School Committee, on the basis of the Superior Court case against the "Arlington Public Schools." <u>See</u> Report at 20. The Magistrate Judge determined that plaintiffs could have brought their claims against the School Committee when they asked the state court to enjoin the release of their emails. <u>See</u> <u>id.</u> Plaintiffs object that the "Arlington School Committee would not have been a proper entity to name [in the Superior Court case] for purposes of injunctive relief." <u>See</u> Objections at 8.

"[L]ocal law should be used in deciding the preclusive effect to be given a local judgment in a federal court." <u>Oliveras v. Miranda Lopo</u>, 800 F.2d 3, 6 (1st Cir. 1986). In Massachusetts,

-12-

> "The doctrine of claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and bars further litigation of all matters that were or should have been adjudicated in the action." <u>Heacock v. Heacock</u>, 402 Mass. 21, 23 (1988). For claim preclusion to bar [subsequent litigation], "three elements are required: (1) the identity or privity of the parties to the present and prior actions; (2) identity of the cause of action; and (3) prior final judgment on the merits." <u>Gloucester Marine Rys. Corp. v. Charles Parisi, Inc.</u>, 36 Mass. App. Ct. 386, 390 (1994).

<u>TLT Constr. Corp. v. A. Anthony Tappe & Assocs.</u>, 48 Mass. App. Ct. 1, 4 (1999).

Plaintiffs object that the School Committee does not share "identity or privity" with the defendant in the Superior Court case, the "Arlington Public Schools." In its Motion to Dismiss, the School Committee asserted that "[t]here is no legal entity known as 'The Arlington Public Schools'" and that "[t]he Arlington School Committee is, in fact, the legal entity in question." <u>See</u> School Committee Mem. of Law in Supp. of Its Mot. to Dismiss at 6. According to the Report:

> During the hearing on these pending motions, defendants argued that the Arlington Public Schools is a nonexistent entity and that during the proceedings in the prior action the School Committee acted as defendant. During the same hearing, plaintiffs acknowledged that the Arlington Public Schools was a fiction created for the expedience of litigation.

<u>See</u> Report at 16. While the standard of review on objection to the Report is de novo, the court has not been provided with a transcript of the hearings before the Magistrate Judge. Thus, the court cannot confirm the accuracy of the Report in this respect. As

-13-

the objecting parties, plaintiffs bore the responsibility to "promptly arrange for transcribing the record." Fed. R. Civ. P. 73(b)(2). In any event, plaintiffs do not challenge the School Committee's assertion in its papers that there is no entity known as the "Arlington Public Schools," or the Report's account of their concession at the hearing before the Magistrate Judge that the entity named in the Superior Court Case was a fiction. Furthermore, the conclusion that the School Committee was the de facto entity sued in the prior action is supported by the Complaint, which states that the "Arlington School system is governed by the School Committee." See Compl. ¶7. Accordingly, it is apparent that there is "identity or privity of the parties" between this case and the prior action because the School Committee's "interest was represented by a party to the prior litigation." TLT Constr. Corp., 48 Mass. App. Ct. at 4, 5.

Plaintiffs do not address in detail the second and third elements of claim preclusion - the identity of the causes of action and the existence of a final judgment on the merits in the prior action. See id. at 4. Nevertheless, their focus on the Report's claim preclusion analysis is sufficient to direct the court to the issue in controversy and, thus, the court is reviewing the matter de novo. See Kelly v. Cort Furniture, 717 F. Supp. 2d 120, 126 (D. Mass. 2010) (quoting Velez-Padro v. Thermo King de P.R., Inc., 465 F.3d 31, 32 (1st Cir. 2006)).

The present case and the prior action share an identical cause of action. In their Opposition to the School Committee's Motion to Dismiss, plaintiffs argue that the complaints filed in the respective actions differ markedly in how they describe the underlying facts. For example, plaintiffs argue that "[i]n the prior complaint it was alleged that Levenson recused himself from the investigation" whereas "[i]n the instant action, the plaintiffs allege that Levenson referred the matter to [an attorney] in furtherance of his plan to retaliate." See Pls. Opp. to Def. Arlington Sch. Comm.'s Mot. to Dismiss at 14. However, the manner in which plaintiffs characterized the same facts in the prior action does not change the fact that the current claims arise from the same "transaction or series of connected transactions." See TLT Constr. Corp., 48 Mass. App. Ct. at 4, 5. "The modern view, which prevails in Massachusetts, is that a party should be held to account not only for what he actually pleaded, but for what he could have pleaded in the earlier suit." In re Sonus Networks, Inc., 499 F.3d 47, 61 (1st Cir. 2007). Plaintiffs emphasize that they sought only injunctive relief against the release of their emails in the prior action. See Objections at 8-9. However, this characterization omits the fact that the complaint in the prior action also included two counts in addition to the count requesting injunctive relief. In those counts, Coughlin alleged that two John Doe defendants intentionally interfered with his contractual

relations. See Superior Court Complaint ¶¶27, 32. As noted by the
Magistrate Judge, "[a]s of the time of the stipulation of dismissal
in the prior action, in fact several months prior to that date,
every event that makes up the facts of this case had already
transpired." See Report at 17.  Indeed, the parties did not dismiss
the prior action until February 3, 2010, just days before
plaintiffs filed this action. See Pls.' Mem. of Law in Supp. of
Opp. to Sch. Comm.'s Mot. to Dismiss, Exhibit A (docket from
Superior Court case). The accessing and release of plaintiffs'
email messages clearly were components of the transactions that
made up the prior action. Accordingly, plaintiffs could have
included in the prior action the claims they now raise against the
School Committee. The causes of action are therefore identical for
claim preclusion purposes.

Finally, plaintiffs have never disputed that their entry into
a voluntary stipulation of dismissal with prejudice in the prior
action qualifies as a "final judgement on the merits." "It is well
settled that voluntary dismissal of a complaint with prejudice
constitutes a 'final judgment on the merits' for purposes of res
judicata." United States v. DeCato, No. 93-10047-WGY, 1997 WL
136339, at *2 (D. Mass. Feb. 20, 1997). Massachusetts law holds the
same. See Leung v. Lui, 54 Mass. App. Ct. 1104, at *2 (2002)
(unpublished) (quoting TLT Constr. Corp., 48 Mass. App. Ct. at 8).

Accordingly, Counts 5 and 6 against the School Committee are

-16-

being dismissed as precluded by the prior action.

### c. Issue preclusion

In addition to the claim preclusion analysis, the Report turns in large part on the Magistrate Judge's conclusion that plaintiffs are precluded from arguing that they had any privacy interest in any of the emails at issue in this case. To reach this conclusion. the Magistrate Judge "address[ed] the unarticulated issue preclusion defense and [took] notice of the prior action in the Superior Court." Report at 22.[7] The Superior Court, the Magistrate Judge concluded, determined that:

> (1) plaintiffs had no privacy interest in the accessing of the emails because they were sent/received on a public network and because plaintiffs were informed through the [school's] employment manual that such emails were considered public records; and (2) any privacy interest plaintiffs had in the sexual content of the emails was outweighed by the public's interest in understanding the grounds for the termination of plaintiffs as public

---

[7] Issue preclusion is also sometimes referred to as "collateral estoppel." It is a component of the broader doctrine of "res judicata." The Supreme Court recommends the term "issue preclusion." See Taylor v. Sturgell, 553 U.S. 880, 892 & n.5 (2008).

Thielman asserted the affirmative defense of "estoppel" in his Answer. See Thielman Answer at 28 (eighth affirmative defense). The Magistrate Judge interpreted this as asserting a defense of issue preclusion. See Report at 21. Buck addressed issue preclusion in her motion to dismiss. See Buck's Mem. in Supp. of Her Mot. to Dismiss at 7-8. Levenson did not raise an issue preclusion defense but the Magistrate Judge exercised her discretion to address the issue sua sponte upon notice of the Superior Court Decision. See Report at 21 (citing Lewis v. N.H. Judicial Branch, No. 09-cv-307-SM, 2010 WL 432367, at *3 (D.N.H. Feb. 3, 2010); see also In re Colonial Mort. Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003).

employees.

Id. By "the emails," the Magistrate Judge referred to the emails sent and received on Bouris's school account, as well as the emails from Bouris's personal account that Levenson and Buck accessed using a username and password Levenson found in Bouris's school account, and the personal account emails that Levenson received in an anonymous package. See Report at 9 (defining all of the emails "collectively" as "'the emails'").

Plaintiffs object to the Magistrate Judge's interpretation of the Superior Court Decision. They highlight a footnote in the Superior Court Decision that expressly excluded at least some of the personal account emails from the ambit of the decision. It provides:

> Arlington asserts that . . . Levenson received an anonymous package containing copies of other emails between the plaintiffs and received from their private accounts, gmail.com and verizon.net . . . . At oral argument, Arlington took the position that those emails were not public records and not subject to disclosure. They are not therefore the subject of this motion.

See Superior Court Decision at 2 n.6. On this basis, plaintiffs argue that "[t]he issue of the accessing and dissemination of the private e-mail has not been previously litigated." See Objections at 3. Plaintiffs object to the recommended dismissal of a number of their claims on the basis of this alleged error by the Magistrate Judge. Plaintiffs are entitled to de novo review of this issue. See Fed. R. Civ. P. 72(b)(3).

-18-

The court may consider the Superior Court Decision in deciding the motions to dismiss as an official public record even though it was not attached to or discussed in the Complaint in this case. See Watterson, 987 F.2d at 3-4; see also In re Colonial Mort. Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003) (court may dismiss action sua sponte on notice that an issue has already been decided). The decision, along with the underlying complaint, were attached to the School Committee's Motion to Dismiss. The authenticity of these documents is not challenged.

In Massachusetts,

> "The doctrine of issue preclusion 'prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim, between the same parties or their privies.' [Heacock v. Heacock, 402 Mass. 21, 23 n. 2 (1988)]. It requires proof that '(1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom estoppel is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication is identical to the issue in the current adjudication. Additionally, the issue decided in the prior adjudication must have been essential to the earlier judgment.' Comm'r of the Dept. of Emp't & Training v. Dugan, 428 Mass. 138, 142 (1998) (citation omitted). Issue preclusion can be used only to prevent relitigation of issues actually litigated in the prior action. Fidelity Mgmt. & Research Co. v. Ostrander, 40 Mass. App. Ct. 195, 199 (1996), and thus we look to the record to see what was actually litigated. See Gleason v. Hardware Mut. Cas. Co., 324 Mass. 695, 699 (1949)."

TLT Constr. Corp., 48 Mass. App. Ct. at 4-5 (quoting Sarvis v. Boston Safe Deposit & Trust Co., 47 Mass. App. Ct. 86, 98 (1999)).

According to the Complaint, there are a number of different

emails at issue in this case. See Compl. ¶¶ 25 (monitoring school email account), 27 (accessing and printing of school account emails), 27 (username and password found in public account emails used to access Bouris's personal email account), 30 (Levenson received anonymous package of printed emails containing both school and personal account emails), 39 (Thielman released to the press emails from both school and personal accounts). They can be placed into four categories: public account emails accessed electronically, private account emails accessed electronically, public account emails received anonymously in printed form, and private account emails received anonymously in printed form. For purposes of issue preclusion, the question is to what extent the Superior Court Decision addressed any or all of these emails. As explained below, the record is unclear on this point.

The complaint filed in the prior action indicates that plaintiffs included at least some private account emails in their request for an injunction. See Superior Court Compl. ¶¶ 11-12 (describing "package of e-mails from the Arlington School e-mail system" and "private e-mail accounts unrelated to the Arlington school system, more specifically g-mail and verizon"), 39.1 (seeking to enjoin release of "any of the e-mails at issue in this action"). In contrast, the Superior Court Decision suggests that the personal emails were not considered. The footnote in the Superior Court Decision states that the emails contained in "an

-20-

anonymous package" received by Levenson from plaintiffs' "private email accounts, gmail.com and verizon.net . . . are not . . . the subject of this motion." <u>See</u> Superior Court Decision at 2 n.6. Furthermore, the Superior Court Decision describes the "emails at issue" as having been "sent and received over the Arlington work email system, Arlington.k12.ma.us, . . . generally during work hours." <u>See</u> <u>id.</u> at 2.

There are also other ambiguities within the Superior Court Decision. For example, the court held that the "emails sent and received on Arlington's <u>internal internet system</u> are public records within the meaning of the [public records] statute." <u>See</u> Superior Court Decision at 8 (emphasis added). The meaning of this statement is not perfectly clear. It is possible that plaintiffs sent emails via their personal accounts during work hours, using work computers and, therefore, over the school's "internal internet system." In contrast, the court later stated that plaintiffs "were aware of Arlington's policy regarding the inappropriate use of its <u>intranet</u>." <u>See</u> <u>id.</u> at 12 (emphasis added). It is not clear whether the Superior Court intended "internal internet" and "intranet" to have different meanings, but the court notes that as a general matter the plaintiffs would have had to access the "external" Internet to use their non-school email accounts.

It is difficult to reconcile these facts. The footnote could be read as excluding only emails that were contained in the

anonymous package delivered to Levenson, or as excluding all gmail.com and verizon.net personal account emails, including those that Levenson and Buck accessed electronically. Excluding all the personal emails from the ambit of the Superior Court Decision is consistent with the court's description of the emails at issue having been sent under the "Arlington.k12.ma.us" "email system," but it is inconsistent with the contents of the Superior Court Complaint, which refers to personal account emails. Given this uncertainty over whether the issue of the personal emails was actually litigated in the prior action, it is not appropriate, on this record, to rely on issue preclusion insofar as plaintiffs' personal email accounts are at issue in this case.[8] See TLT Constr. Corp., 48 Mass. App. Ct. at 5 (party raising issue preclusion bears burden of establishing each of element of standard).

The same cannot be said for the school account emails. Notably, plaintiffs do not raise any objections to the Magistrate Judge's determination that the prior action conclusively

---

[8]Defendants argue that the Magistrate Judge did not, in fact, base her decision entirely on the Superior Court Decision. The Magistrate Judge wrote that "[i]t should be noted that had this court not found the issue [of the emails] precluded from relitigation, it would have independently come to the same conclusions as the Middlesex Superior Court in the prior action and for the same reasons regarding the public nature of the emails and the extent of the plaintiffs' privacy interest in them." See Report at 26 n.12. As stated above, it is not sufficiently clear that the Superior Court Decision addressed any of the private account emails. The court cannot conclude that the Magistrate Judge adequately considered the issue, either.

established that their public account emails were public records in
which plaintiffs had no privacy interest. See Objections at 4.
According to the Superior Court Decision, in Massachusetts "all
email created or received by an employee of a government unit is a
public record . . . and all email messages are subject to public
access and disclosure through the Public Records Law." See Superior
Court Decision at 8 (quoting Feb. 16, 1999 Supervisor of Records of
Mass. Bulletin No. 1-99) (internal quotation marks omitted).
Furthermore, the school instructed its employees that they should
not expect their school email messages to be private. See id. at 8-
9. Plaintiffs, who were parties to the final, binding Superior
Court Decision, cannot now argue that they had a privacy interest
in their school account emails. See TLT Constr. Corp., 48 Mass.
App. Ct. at 4-5.[9] To the extent that plaintiffs' claims are
premised on having a privacy interest in the school email messages,
they are being dismissed.

_____

[9]Plaintiffs do not mention the fact that the Superior Court
Decision expressly did not address the anonymously-received
package of emails. See Superior Court Decision at 2 n.6. The
footnote in the Superior Court Decision describes the package as
containing only personal account emails, but the Complaint in the
present case describes the anonymous package of emails as
containing both school and personal account messages. See Compl.
¶30 (anonymous package contained emails "including those accessed
from Bouris's private e-mail account"). However, there has been
no suggestion that the package contained public account emails
that had not already been accessed. Furthermore, the Superior
Court Decision is broad enough to establish conclusively, for
purposes of this case, that plaintiffs had no privacy interest in
any school account emails, regardless of how they were obtained.

A number of the Magistrate Judge's recommended dismissals are predicated, at least in part, on her conclusion that issue preclusion prevents plaintiffs from claiming to have a privacy interest in any of the emails, school or personal. Because the court is not adopting that conclusion with regard to the personal emails, the court must conduct a de novo application of the motion to dismiss standard to the following claims: (1) Counts 9 through 14, alleging privacy claims under §1983 against the individual defendants; (2) Counts 7 and 8, alleging claims under §1983 against Levenson for failing to supervise Buck and allowing her to infringe plaintiffs' privacy rights; (3) Counts 17 through 22, alleging invasion of privacy against the individual defendants; and (4) Counts 33 and 34, which allege IABR claims against Buck, and which the Magistrate Judge recommends dismissing on the reasoning that Buck's "means" of accessing the emails were not inappropriate because the emails were public records.[10] To the extent that these claims allege a privacy interest in the school emails, they are being dismissed.

### d. Invasion of privacy (Counts 17 - 22)

In Massachusetts, M.G.L. c. 213, §1B, "creates a statutory

---

[10]As described in detail below, the court is adopting the Report with regard to Counts 7-14, 16, and 31-32 insofar as they involve non-privacy claims, such as harm to plaintiffs reputations. Plaintiffs did not object to those recommendations and, therefore, are not entitled to de novo review of them. See Costa v. Hall, No. 00-12213-MLW, 2010 WL 5018159, at *17 (D. Mass. Dec. 2, 2010).

right against 'unreasonable, substantial or serious' interference with a person's privacy." <u>Ayash v. Dana-Farber Cancer Inst.</u>, 443 Mass. 367, 382 (2005).[11] "To recover under the statute for dissemination of private information, a plaintiff must establish that the disclosure was both unreasonable and either substantial or serious." <u>Id.</u> (internal footnote and quotation marks omitted). "To fall under the protection of the statute, the disclosed facts must be of a 'highly personal or intimate nature.'" <u>Taylor v. Swartwout</u>, 445 F. Supp. 2d 98, 103 (D. Mass. 2006) (quoting <u>Bratt v. Int'l Bus. Machs. Corp.</u>, 392 Mass. 508, 518 (1984)). In the employment context, a plaintiff must establish that the employer "had no legitimate reason for" "disclosing facts of highly personal or intimate nature." <u>Carmack v. Nat'l R.R. Passenger Corp.</u>, 486 F. Supp. 2d 58, 80 (D. Mass. 2007). Further, "there can be no invasion of privacy where the facts, though highly personal, are already in the public domain." <u>Taylor</u>, 445 F. Supp. 2d at 103.[12]

_____

[11]M.G.L. c. 214, §1B provides: "A person shall have a right against unreasonable, substantial or serious interference with his privacy. The superior court shall have jurisdiction in equity to enforce such right and in connection therewith to award damages."

[12]There is an additional exception to liability under §1B. "When the subject matter of the publicity is of public concern, . . . there is no invasion of privacy." <u>Ayash</u>, 443 Mass. at 382 (internal quotation marks omitted); <u>see</u> <u>Boston Herald, Inc. v. Sharpe</u>, 432 Mass. 593, 612 (2000). It appears that this rule traditionally applies to protect the news media. <u>See</u> <u>Howell v. Enterprise Publ'g Co.</u>, 72 Mass. App. Ct. 739, 750 (2008), <u>rev'd on other grounds</u>,455 Mass. 641 (2010) (quoting <u>Peckham v. Boston Herald, Inc.</u>, 48 Mass. App. Ct. 282, 287-88 (1999) ("Matters

It is undisputed that the contents of the private account emails qualify as "highly personal or intimate" in nature.

The second element of the invasion of privacy cause of action is whether the intrusion was unreasonable and serious or substantial. See M.G.L. c. 214, §1B; Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 409 Mass. 514, 517-18 (1991). The parties have not addressed whether the alleged intrusions were unreasonable and serious or substantial. Nevertheless, the accessing of a person's private email account may qualify as such an intrusion. Cf. United States v. Warshak, 631 F.3d 266, 284 (6th Cir. 2010) ("In short, 'account' is an apt word for the conglomeration of stored messages that comprises an email account, as it provides an account of its owner's life. By obtaining access to someone's email, government agents gain the ability to peer deeply into his activities.").

---

included within the scope of legitimate public concern are those 'of the kind customarily regarded as "news."'"). Even if defendants in this case, who are not members of the media, could be protected by this exception, it would not apply. "The line [of what qualifies as a matter of public concern] is to be drawn when the publicity ceases to be the giving of information to which the public is entitled, and becomes a morbid and sensational prying into private lives for its own sake, with which a reasonable member of the public, with decent standards, would say that he had no concern." Id. Here, the matter of public concern may have extended to the fact that plaintiffs were in a sexual relationship and, perhaps, the sordidness of their communications over school email accounts. Garnishing the matter with the "more blatant" details from the personal emails, see Compl. ¶34, could qualify as "morbid and sensational prying." See id. Dismissal on this basis is, therefore, inappropriate.

"When determining the reasonableness of an intrusion, an 'employer's legitimate interest in determining the employees' effectiveness in their jobs should be balanced against the seriousness of the intrusion on the employees' privacy.'" Dasey v. Anderson, 304 F.3d 148, 154 (1st Cir. 2002) (quoting O'Connor v. Police Comm'r of Boston, 408 Mass. 324, 330 (1990)). According to the Complaint, there are essentially two alleged intrusions. First, plaintiffs allege that Levenson and Buck accessed Bouris's personal email account and disseminated its contents.[13] Second, plaintiffs allege that Thielman, possibly with Levenson, released the personal emails to the press. See Compl. ¶39.

As to the first intrusion, defendants defend the accessing of Bouris's personal email account on the ground that she had made her username and password available by storing them in her school email account. In other words, defendants argue that, upon learning that plaintiffs were engaged in a sexual relationship and finding proof of that relationship in their school emails, it was reasonable for defendants Buck and/or Levenson to search for more evidence in Bouris's personal account because she made it possible for them to

---

[13]The Complaint does not describe exactly how Levenson and/or Buck disseminated the emails. However, Thielman, a member of the School Committee, apparently had access to the personal account emails. See Compl. ¶39. Disclosure to individuals within the Arlington school system can qualify as an invasion of privacy. See Bratt, 392 Mass. at 509-10 ("disclosure of private facts about an employee through an intracorporate communication is sufficient publication" under §1B); Bennett v. City of Holyoke, 230 F. Supp. 2d 207, 222-23 (D. Mass. 2002).

do so. However, this misconstrues the inquiry, which is whether defendants' intrusion was reasonable based on a legitimate interest in determining plaintiffs' effectiveness as employees. See Dasey, 304 F.3d at 154.

Reasonable intrusions include urinalysis testing to ensure that police cadets are not using drugs, see O'Connor, 408 Mass. at 330, ordering a psychiatric evaluation of a train engineer to ensure he could perform his job safely, Carmack, 486 F. Supp. 2d at 81-82, and random drug testing to ensure that employees do not operate company vehicles while intoxicated, Webster v. Motorola, Inc., 418 Mass. 425, 432-33 (1994). Monitoring plaintiffs' school accounts may have been supported by a legitimate business interest. See Garrity v. John Hancock Mut. Life Ins. Co., No. 00-12143-RWZ, 2002 WL 974676, at *1-2 (D. Mass. May 7, 2002) (accessing work emails). However, accessing a personal email account without permission or notice may not be. Moreover, the intrusion into a personal email account, which could have contained a myriad of irrelevant but highly personal facts, was substantial when compared to the fact that details confirming plaintiffs' relationship were already available in the school emails. Cf. Warshak, 631 F.3d at 284. Therefore, on balance it is plausible that the seriousness of the intrusion by defendants outweighs defendants' interest in monitoring plaintiffs conduct as employees. Therefore, plaintiffs have adequately pled an unreasonable intrusion by Buck and

-28-

Levenson. <u>See</u> <u>id.</u>

Defendants defend the release of the personal account emails to the press by arguing that the Superior Court Decision established that they were public records and, in any event, that plaintiffs had no expectation of privacy in their emails. As discussed above, however, such a conclusion cannot be drawn from the Superior Court Decision. Additionally, the cases that hold that employees have no expectation of privacy in their work emails, such as <u>Garrity</u>, 2002 WL 974676, at *1-2, do not involve personal email accounts. Moreover, it is plausible that plaintiffs will be able to prove that releasing the personal account emails to the press did not further an interest in ensuring that plaintiffs, as employees, were effective. <u>See</u> <u>Dasey</u>, 304 F.3d at 154. Thus, plaintiffs have adequately pled that the second intrusion was unreasonable and substantial or serious.

Defendants also argue that the presence in the public domain of the public account emails defeats plaintiffs' invasion of privacy claims concerning the personal emails. <u>See, e.g.</u>, Levenson's Resp. to Objections at 10. Plaintiffs have no invasion of privacy claim if the facts disclosed were already public. <u>See</u> <u>Taylor</u>, 445 F. Supp. 2d at 103. However, the Complaint distinguishes between the emails, describing the personal emails as "more blatant" than the school emails. <u>See</u> Compl. ¶34. At the motion to dismiss stage, this allegation, which is drawn from a

report to Levenson concerning the emails, is enough to defeat defendants' contention. Because the personal emails were "more blatant," it is plausible that certain facts contained in them were not "already in the public domain" as a result of the school account emails being public records. See Taylor, 445 F. Supp. 2d at 103. The fact that plaintiffs were engaged in a sexual relationship may have been public, or at least available to the public, but the most "blatant" details of how they conducted that relationship may have remained private.

In view of the foregoing, the invasion of privacy claims, Counts 17 through 22, are not being dismissed.

e. <u>Privacy claims under §1983 (Counts 7 - 14)</u>

Plaintiffs' non-supervisory claims under §1983 against Levenson, Thielman, and Buck (Counts 9 - 14) include three components. Plaintiffs allege that each individual defendant unconstitutionally: (1) invaded their right to privacy; (2) deprived them of their employment in retaliation for engaging in protected speech; and (3) injured their reputations. See, e.g., Compl. ¶104 (Coughlin's claim under §1983 against Levenson). The Magistrate Judge recommends that the claims under §1983 against Thielman and Buck (Counts 11-12, and 13-14, respectively) be dismissed in their entirety. The claims against Levenson (Counts 9 and 10) would survive, but only to the extent that they allege harm to plaintiffs' reputations. See Report at 30-31 (privacy); 32-33,

-30-

37 (retaliation for protected speech); 38-39 (reputation). In Counts 7 and 8, plaintiffs allege that Levenson's failure to supervise Buck adequately enabled her to violate their constitutional rights. The Magistrate Judge recommends dismissing these claims because it is not adequately alleged that Buck engaged in any unconstitutional behavior.

Plaintiffs limit their objection to the recommended dismissal of their claims under §1983 to the portion of those claims that allege violations of their constitutional right to privacy.[14] The privacy right that plaintiffs identify is the "individual interest in avoiding disclosure of personal matters." See, e.g., Opp. to Levenson's Mot. to Dismiss at 6 (quoting Whalen v. Roe, 429 U.S. 589, 599 (1977)). They do not allege that defendants violated their rights protected under the Fourth Amendment. See Ontario v. Quon, 130 S. Ct. 2619, 2628-29 (assuming without deciding that police officers had Fourth Amendment interest in text messages sent and received while on duty using city resources, and finding no Fourth Amendment violation because the city's search was reasonable).

Whether the Fourteenth Amendment includes a right against the disclosure of private information is an unsettled and hotly contested question of law. See Nat'l Aeronautics & Space Admin. v. Nelson, 131 S. Ct. 746, 764-65 (2011) (Scalia, J., concurring). The

---

[14]As described below, the court is adopting the Report's recommendations concerning the other components of plaintiffs' §1983 claims.

Supreme Court has never decided the question despite several opportunities to do so. See id. at 756-57 (assuming without deciding that a privacy right existed, as the Court did in Whalen, 429 U.S. at 599); id. at 766 (Scalia, J., concurring) (describing similar approach taken in Nixon v. Adm'r of Gen. Servs., 433 U.S. 425 (1977)). The First Circuit has held that the right, if it exists at all, is not clearly established. See Borucki v. Ryan, 827 F.2d 836, 844-45 (1st Cir. 1987). Although Borucki examined the state of the law as it existed in 1983, the question remains unsettled in the First Circuit. See Klein v. MHM Corr. Servs., Inc., No. 08-11814-MLW, 2010 WL 3245291, at *4-5 (D. Mass. Aug. 16, 2010); Demers ex rel. Demers v. Leominster Sch. Dept., 263 F. Supp. 2d 195, 203 n.4 (D. Mass. 2003).

Absent a violation of a clearly established constitutional right, qualified immunity shields public officials performing discretionary functions from liability for civil damages. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A right is "clearly established" if, at the time of the alleged violation, "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Here, the alleged Fourteenth Amendment right to privacy claimed by plaintiffs was not clearly established at the time of the alleged violations. See Nat'l Aeronautics & Space Admin., 131

S. Ct. at 764-65 (Scalia, J., concurring); <u>Demers ex rel. Demers</u>, 263 F. Supp. 2d at 203 n.4. Accordingly, Levenson, Buck, and Thielman are entitled to qualified immunity on Counts 7 through 14, which allege unconstitutional privacy violations. <u>See</u> <u>Pearson v. Callahan</u>, 129 S. Ct. 808, 818 (2009) (courts may dismiss claims on qualified immunity grounds without addressing the merits of the claims provided that the claimed right was not clearly established).

### f. <u>IABR claims (Counts 33 - 34)</u>

The final counts that are implicated by the Magistrate Judge's issue preclusion conclusion are Counts 33 and 34, which allege that Buck interfered with plaintiffs' advantageous business relations. "To make a successful claim for intentional interference with advantageous relations, a plaintiff must prove that: (1) he had an advantageous relationship with a third party . . .; (2) the defendant knowingly induced a breaking of the relationship; (3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." <u>Blackstone v. Cashman</u>, 448 Mass. 255, 260 (2007).

Plaintiffs' employment contracts satisfy the first element of the claims. Neither plaintiffs nor defendants have addressed the second element. However, it is plausible that Buck, who allegedly helped Levenson access Bouris's school account emails, knowingly

-33-

helped him access the personal account in search of additional messages that would be detrimental to plaintiffs' continued employment.

The court disagrees with the Magistrate Judge's conclusion as to the third element. There are facts alleged in the Complaint that would support a claim that Buck acted with an improper motive. Improper motive can be established by inferences alone. See Wayfield v. Town of Tisbury, 10 F.3d 805, *2 (1st Cir. 1993) (unpublished table decision). Such inferences are available from the facts alleged in the Complaint, which describes Buck as acting "in concert" with Levenson. See Compl. ¶27. Plaintiffs allege that it was Levenson's "plan to retaliate" against them, and that he was "[e]mboldened by . . . retaliatory animus." See id. at ¶¶25, 31. The "in concert" allegation is supported by the allegation that Buck accessed Bouris's personal email account with Levenson.[15]

---

[15]Plaintiffs draw the court's attention to a document referred to as "Levenson's Log," in which Levenson is alleged to have documented the investigation and, as a result, the improper actions by Levenson and Buck. See Objections at 6-7. Plaintiffs appear to have had possession of Levenson's Log in 2008 and they chose not to incorporate it into their Complaint, filed in 2010. See Pls.' Opp. to Def.'s Mot. to Stay Case Pending Resolution of Ongoing Arbitrations at 7 (describing discovery of Levenson's Log as occurring "shortly after" August 5, 2008). A copy of Levenson's Log was attached as an exhibit to plaintiffs opposition to defendants' request for a stay of this case pending ongoing arbitrations. See id., Exhibit B. If alleged in the Complaint, certain parts of Levenson's Log would support an inference that Buck acted with malice. For example, Levenson's account of the investigation describes Buck as the person who accessed the personal email accounts and as believing plaintiffs' relationship to be "weird" and "wrong." See id. However, the

Accordingly, it is plausible that Buck shared Levenson's improper motive.

In addition, plaintiffs have adequately alleged that Buck acted with improper means. "'[I]mproper means' may consist of a violation of a statute or common law precept." See Kurker v. Hill, 44 Mass. App. Ct. 184, 191 (1998) (breach of fiduciary duty). Here, plaintiffs have stated a plausible claim that Buck violated the Massachusetts statutory right to privacy, M.G.L. c. 214, §1B. Accordingly, Counts 33 and 34 are not being dismissed.

g. Defamation claims (Counts 27 - 28)

Plaintiffs object to the recommended dismissal of Counts 27 and 28, which allege that Buck defamed them.[16] Plaintiffs allege that Buck published "false defamatory statements" about them. See Compl. ¶¶209, 214. However, the Complaint does not identify any

---

court cannot consider Levenson's Log in the context of the motions to dismiss. The Complaint itself describes the document as containing fabrications. See Compl. ¶37. More fundamentally, however, Levenson's Log does not qualify under the "narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiff's claim; or for documents sufficiently referred to in the complaint." Watterson, 987 F.2d at 3-4. The brief mention of the document in the Complaint is not sufficient to render plaintiffs' "factual allegations . . . expressly linked to - and admittedly dependent upon - a document (the authenticity of which is not challenged)." Beddall, 137 F.3d at 16-17. In any event, the Complaint adequately pleads that Buck acted with improper motive.

[16]Thielson did not include the defamation claims against him (Counts 25 and 26) in his motion to dismiss and, therefore, they are not subject of the Report or this Memorandum and Order.

false statements made by Buck about plaintiffs. Rather, it describes Buck's participation in the publication of plaintiffs' email communications, the truth of which is not challenged. The Magistrate Judge made this observation in the Report, and plaintiffs have not challenged it. See Report at 27.

Ordinarily, "a given statement, even if libelous, must also be false to give rise to a cause of action." Noonan v. Staples, Inc., 556 F.3d 20, 26 (1st Cir. 2009). Truth is a defense to defamation. See id. "Massachusetts law, however, recognizes a narrow exception to this defense: the truth or falsity of the statement is immaterial, and the libel action may proceed, if the plaintiff can show that the defendant acted with 'actual malice' in publishing the statement." Id. This exception is embodied in a statute, M.G.L. c. 231, §92.

"Actual malice" has acquired a specific definition in contemporary defamation law. See Noonan, 556 F.3d at 28. It is derived from New York Times v. Sullivan, 376 U.S. 254, 280 (1964), and means to act "'with knowledge that [a defamatory statement] was false or with reckless disregard of whether it was false or not.'" Cantrell v. Forest City Publ'q Co., 419 U.S. 245, 251 (1974) (quoting Sullivan, 376 U.S. at 280) (alteration in original). However, the Massachusetts statute, drafted six decades before Sullivan, does not incorporate this definition. See Noonan, 556 F.3d at 29. In this context, the "actual malice" exception to the

truth defense to a claim of defamation means "common-law malice," which is defined as "ill will" or "malevolent intent." See id. at 29-30 (internal quotation marks omitted).[17]

The Magistrate Judge recommends dismissing the defamation claims against Buck because plaintiffs did not adequately plead that she acted with malice. However, as described earlier in connection with plaintiffs' IABR claims, the Complaint alleges facts that suggest that Buck acted with ill will or bad intent. Taken as true, the facts alleged show Buck acting "in concert" with Levenson to further Levenson's malicious campaign against plaintiffs. It is plausible that Buck did so while sharing Levenson's malicious intent because Levenson and Buck accessed Bouris's personal email account together. Thus, because the explicit personal emails were published and were capable of discrediting plaintiffs in the community, the plausible allegations of malice prevent the dismissal of Counts 27 and 28. See id. at 25.

Finally, the conclusion that plaintiffs have adequately alleged that Buck acted with malice is sufficient to defeat Buck's argument, made in her Motion to Dismiss, that her actions were

---

[17]The "actual malice" exception to the truth defense is not constitutional when applied to matters of public concern. See Noonan, 556 F.3d at 28 n.7 (citing Shaari v. Harvard Student Agencies, Inc., 427 Mass. 129, 132-33 (1998)). In other words, if the matter is of public concern, truth remains a defense to a claim of defamation. See Shaari, 427 Mass. at 133 (truthful description in travel guide of sexual harassment claims against hostel proprietor was matter of public concern). Defendants have not raised this issue.

protected by "conditional privilege." "An employer has a conditional privilege to disclose defamatory information concerning an employee when the publication is reasonably necessary to serve the employer's legitimate interest in the fitness of an employee to perform his or her job." <u>Bratt</u>, 392 Mass. at 509. However,

> "[t]he conditional privilege is lost if the defendant (1) knew the information was false, (2) had no reason to believe it to be true, or (3) recklessly published the information unnecessarily, unreasonably, or excessively." <u>Sklar v. Beth Israel Deaconess Med. Ctr.</u>, [59 Mass. App. Ct. 550, 558 (2003)], and cases cited. Lastly, the conditional privilege may be lost if the plaintiff proves the defendant acted out of malice. Malice, in this sense, occurs when the "defamatory words, although spoken on a privileged occasion, were not spoken pursuant to the right and duty which created the privilege but were spoken out of some base ulterior motive." <u>Dexter's Hearthside Rest., Inc. v. Whitehall Co.</u>, 24 Mass. App. Ct. 217, 223 (1987). This "may consist either in a direct intention to injure another," <u>Bratt v. Int'l Bus. Machs. Corp.</u>, 392 Mass. 508, 514 (1984), quoting from <u>Petition of Retailers Commercial Agency, Inc.</u>, 342 Mass. 515, 521 (1961), or an "intent to abuse the occasion [giving rise to the privilege] by resorting to it 'as a pretence,' . . . or 'reckless disregard' of the rights of another." <u>Ezekiel v. Jones Motor Co.</u>, 374 Mass. 382, 390 (1978). Reckless disregard of the rights of another can occur through "unnecessary, unreasonable or excessive publication." <u>Bratt v. Int'l Bus. Machs. Corp.</u>, [392 Mass. at 515].

<u>Dragonas v. Sch. Comm. of Melrose</u>, 64 Mass. App. Ct. 429, 438-39 (2005) (footnote omitted) (alterations in original). As explained earlier, plaintiffs have adequately pleaded that Buck, acting "in concert" with Levenson to further his retaliatory campaign, acted out of malice. Accordingly, plaintiffs' defamation claims against Buck are not being dismissed.

h. <u>IIED (Counts 35 - 40)</u>

Finally, plaintiffs object to the recommended dismissal of their IIED claims against Levenson, Thielman, and Buck. To survive the motions to dismiss, the Complaint must adequately plead:

> "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct . . .; (2) that the conduct was 'extreme and outrageous,' was 'beyond all possible bounds of decency' and was 'utterly intolerable in a civilized community' . . .; (3) that the actions of the defendant were the cause of the plaintiff's distress . . .; and (4) that the emotional distress sustained by the plaintiff was 'severe'" . . . .

<u>Howell v. Enterprise Publ'g Co.</u>, 455 Mass. 641, 672 (2010) (quoting <u>Agis v. Howard Johnson Co.</u>, 371 Mass. 140, 144-45 (1976)). "The standard for making a claim of intentional infliction of emotional distress is very high in order to 'avoid [] litigation in situations where only bad manners and mere hurt feelings are involved.'" <u>Doyle v. Hasbro, Inc.</u>, 103 F.3d 186, 195 (1st Cir. 1996) (quoting <u>Agis</u>, 371 Mass. at 145).

The Magistrate Judge recommends dismissing these claims on the grounds that defendants' conduct was not "extreme and outrageous" and, alternatively, that plaintiffs have not alleged any facts in support of their claims that they suffered mental anguish and severe psychological injuries. <u>See</u> Report at 24.

The conduct at issue has been recounted earlier. Plaintiffs base their claims on the accessing and dissemination of Bouris's personal emails by Levenson and Buck, and on the release of those

-39-

emails to the press by Thielman.

The first and third elements of the tort are established by the facts alleged in the Complaint. Plaintiffs allege that Levenson, acting in concert with Buck, accessed Bouris's personal email account and distributed "blatant" details about plaintiffs' sexual relationship contained in the messages, and that, as a result, plaintiffs suffered mental anguish and severe psychological injuries. See Compl. ¶¶25, 27, 252, 257, 272, 277. They also allege that they suffered identical harm as a consequence of Thielman's decision to release their personal communications to the press. Id. ¶¶262, 267. The disclosure of these details to the media could have plausibly been with the intent to inflict emotional distress, and, in any event, such distress was the likely result of doing so. See Howell, 455 Mass. at 672.

The second and fourth prongs of plaintiffs' claims present closer questions. However, the claim that defendants engaged in "extreme and outrageous" behavior is adequately asserted. Plaintiffs allege that Levenson and Buck accessed Bouris's personal email account and disseminated highly personal messages as part of a retaliatory campaign against plaintiffs, and that Thielman took those emails and released them to the press for publication. Putting "as harsh a face on [defendant's actions] as the basic facts would reasonably allow," Foley v. Polaroid Corp., 400 Mass. 82, 100 (1987) (alteration in original), defendants' conduct could

be found to be "beyond all possible bounds of decency and . . . utterly intolerable in a civilized community." <u>Howell</u>, 455 Mass. at 672 (internal quotation marks omitted). IIED claims have survived motions to dismiss where the conduct involved public humiliation caused by an employer, <u>see</u> <u>Agis</u>, 371 Mass. at 145-46, and where it involved a lawyer forcing his secretary to forge legal documents, <u>Brown v. Nutter, McClennen & Fish</u>, 45 Mass. App. Ct. 212, 219 (1998). Thus, while it is not "'enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or event that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort,'" <u>Quinn v. Walsh</u>, 49 Mass. App. Ct. 696, 706-07 (2000) (quoting <u>Tetrault v. Mahoney, Hawkes & Goldings</u>, 425 Mass. 456, 466 (1997)), allegations of malicious intrusions into plaintiffs' privacy and exposure of intimate information for the purpose of retaliation are sufficient to state a plausible claim that defendants' conduct was extreme and outrageous.

As to the fourth prong, plaintiffs have adequately pled that their distress was "severe and of a nature that no reasonable man could be expected to endure it." <u>Agis</u>, 371 Mass. at 145 (internal quotation marks omitted). The standard of proof for this prong is "demanding." <u>See</u> <u>Kennedy v. Town of Billerica</u>, 617 F.3d 520, 530 (1st Cir. 2010). However, at the pleading stage, the standard is

more forgiving. Agis, which is the seminal Massachusetts case with regard to the IIED tort at the motion to dismiss stage, is instructive. There, the Supreme Judicial Court of Massachusetts held that a complaint that alleged that the plaintiff "became greatly upset, began to cry, sustained emotional distress [and] mental anguish" was sufficient to overcome a motion to dismiss. Agis, 371 Mass. at 141, 145-46. Here, plaintiffs have pled that they have suffered mental anguish and severe psychological injuries as a result of defendants' conduct. This is sufficient under Agis. Summary judgment or trial are more appropriate procedures for determining whether these allegations, which the court is required to take as true at this point, are supported. Compare Kennedy, 617 F.3d at 531 (directed verdict for defendant affirmed where plaintiff suffered fear, nervousness, nightmares, sweating and pulse-racing), and Bailey v. Shriberg, 31 Mass. App. Ct. 277, 279-80 (affirming trial judgment for defendant where plaintiffs were merely upset), with Simon v. Solomon, 385 Mass. 91, 95-98 (1982) (affirming judgment for plaintiff where defendant landlord failed to address repeated flooding, with water and sewage, of plaintiffs' apartment), and Homesavers Council of Greenfield Gardens, Inc. v. Sanchez, 70 Mass. App. Ct. 453, 461 (2007) (affirming trial judgment for plaintiff where plaintiff was anxious, unable to sleep, and had thoughts of suicide).

Finally, Levenson argues that plaintiffs' IIED claims are

barred by the Massachusetts Workers Compensation Act (the "MWCA"), M.G.L. c. 152, §24, which provides that "[a]n employee shall be held to have waived his right of action at common law . . . in respect to an injury that is compensable under [the MWCA], to recover for personal injuries, if he shall not have given his employer, at the time of his contract of hire, written notice that he claimed such right. . . ." However, Levenson has not demonstrated that the claims against him are covered by the MWCA exclusion. See M.G.L. c. 152, §26. Some IIED claims have been held to be precluded by the MWCA. See, e.g., Simmons v. Merchs. Mut. Ins. Co., 394 Mass. 1007, 1007 (1985) (rescript); Foley v. Polaroid Corp., 381 Mass. 545, 545, 550 (1980); St. Arnaud v. Chapdelaine Truck Ctr., Inc., 836 F. Supp. 41, 43-44 (D. Mass. 1993). However, such claims have involved claims against the plaintiffs' employers, not individuals. For example, in Brown, the court dismissed an IIED claim against the defendant law firm as precluded by the MWCA, but allowed pursuit of an IIED claim against the defendant employee. 45 Mass. App. Ct. at 214-16 (employees "are not immunized from suit by the workers' compensation act for tortious acts which they commit outside the scope of their employment, which are unrelated to the interest of the employer"). At this stage, the court cannot conclude that Levenson was acting within the scope of his employment when he carried out his allegedly malicious campaign against plaintiffs.

2. <u>Untimely objections by Levenson</u>

In his Response to Plaintiffs' Objections, Levenson argues that the court should dismiss the remaining claims against him, meaning the claims as to which the Magistrate Judge recommends denying his Motion to Dismiss. Levenson filed his Response after the fourteen-day time limit established by Federal Rule of Civil Procedure 72(b)(2) and expressly explained in the Report. <u>See</u> Report at 45 n.19. Therefore, they are untimely.[18]

The court is not required to engage in a de novo review of portions of the Report to which objections have not been properly made.[19] <u>See</u> Fed. R. Civ. P. 72(b)(3); <u>Velez-Padro v. Thermo King de P.R., Inc.</u>, 585 F.3d 441, 446 (1st Cir. 2009); <u>cf.</u> <u>United States v. Mitchell</u>, 85 F.3d 800, 803 (1st Cir. 1996) (failure to object waives appellate review). In <u>Thomas v. Arn</u>, 474 U.S. 140, 149-50 (1985), the Supreme Court held that the waiver of de novo review by failing to file objections does not entitle a party to "some lesser

---

[18]Some of Levenson's arguments in his Response are also waived. For example, Levenson now for the first time claims that plaintiffs are public figures for purposes of the defamation claims. <u>See</u> Response to Objections at 11. Arguments not raised before the Magistrate Judge are waived. <u>See</u> <u>Fireman's Ins. Co. of Newark, N.J. v. Todesca Equipment Co.</u>, 310 F.3d 32, 38 (1st Cir. 2002).

[19]Plaintiffs filed a Motion to Strike the portions of Levenson's response that amount to untimely objections to the Report. However, the court is not <u>prohibited</u> from reviewing the portions of the Report to which Levenson untimely objects. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 154 (1985). Accordingly, the Motion to Strike is being denied.

standard" of review. <u>See also</u> <u>Costa</u>, 2010 WL 5018159, at *17
("Absent objections, the court may adopt the report and
recommendation of the magistrate judge."). However, review by the
court is not prohibited, <u>see</u> <u>Thomas</u>, 474 U.S. at 154, and some
level of oversight, even if not de novo, is encouraged. <u>See</u>
<u>Henderson v. Carlson</u>, 812 F.2d 874, 878 (3rd Cir. 1987).

Levenson's untimely objections seek the dismissal of the
claims that the Magistrate Judge recommends should survive: (1)
Counts 9 and 10, to the extent that they allege that plaintiffs are
entitled to relief under §1983 because Levenson harmed plaintiffs'
reputations; (2) Count 15, which alleges Levenson violated the MCRA
by threatening to start a false, disparaging rumor about Bouris;
(3) Counts 23 and 24, which allege that Levenson defamed
plaintiffs; and (4) Counts 29 and 30, which allege IABR claims.

The court has reviewed the Report and finds the Magistrate
Judge's treatment of these claims to be thorough, thoughtful, and
persuasive. For example, the Complaint plausibly alleges that
Levenson acted with malice, which is relevant to the defamation and
IABR claims. Additionally, the Complaint alleges sufficient
"coincidence" between Levenson's conduct and plaintiffs'
terminations to survive the motion to dismiss the claims of
unconstitutional harm to their reputations. <u>See</u> <u>Hawkins v. R.I.</u>
<u>Lottery Comm'n</u>, 238 F.3d 112, 115 (1st Cir. 2001). Finally, the
Magistrate Judge's recommended finding of issue preclusion based on

her interpretation of the Superior Court Decision does not implicate the claims that she recommends should survive the Motion to Dismiss. Accordingly, the Report is being adopted as to the surviving claims against Levenson.

       3. <u>Remaining claims</u>

Several of the Magistrate Judge's recommendations are not objected to. Based on the court's review of the Report, the court is adopting the Magistrate Judge's recommendations as to those claims. <u>See</u> <u>Costa</u>, 2010 WL 5018159, at *17. Accordingly, the following claims are being dismissed: (1) Count 16, alleging an MCRA claim against Thielman; and (2) Counts 31 and 32, alleging IABR claims against Thielman. Additionally, as discussed earlier, plaintiffs limited their objections to the Report's treatment of their claims under §1983 to the Magistrate Judge's privacy determination. They did not object to the dismissal of the portions of Counts 9 through 14 that allege that Levenson, Thielman, and Buck retaliated against them for engaging in protected speech, or that Thielman and Buck harmed their reputations. Thus, Counts 9 through 14 are being dismissed consistent with the Report's recommendations. Similarly, plaintiffs only objected to the dismissal of Counts 7 and 8, which allege §1983 claims against Levenson in his supervisory capacity, to the extent that the Magistrate Judge determined that Buck did not violate plaintiffs' claimed constitutional right to privacy. Accordingly, to the extent

that Counts 7 and 8 assert claims against Levenson concerning
Buck's alleged infringements of plaintiffs' speech and reputation
rights, they are also being dismissed. In other words, of
plaintiffs' claims under §1983 against the School Committee,
Levenson, Thielman, and Buck, only the claims against Levenson
(Counts 9 and 10) survive, and only to the extent that they allege
unconstitutional harm to plaintiffs' reputations.

    4. <u>Summary</u>

As a result of the foregoing analysis, plaintiffs are being
permitted to pursue some, but not all, of the forty counts alleged
in their Complaint. The following counts survive the motions to
dismiss: Counts 1 through 4 (against Town of Arlington, not subject
to motion to dismiss); portions of Counts 9 and 10 (harm to
reputation under §1983 against Levenson); Count 15 (MCRA claim
against Levenson); Counts 17 through 22 (invasion of privacy
against Levenson, Thielman, and Buck); Counts 23 through 28
(defamation against Levenson, Thielman, and Buck); Counts 29, 30,
33, and 34 (IABR against Levenson and Buck); and Counts 35 through
40 (IIED against Levenson, Buck, and Thielman). However, plaintiffs
are barred by issue preclusion from arguing that they have a
privacy interest in the school emails.

IV. MOTION TO FILE SUPPLEMENTAL AUTHORITY

Finally, defendants filed a Motion for Leave to File Notice of
Supplemental Authority (the "Supplemental Authority Motion") on

-47-

June 24, 2011, five months after the Report was issued. Plaintiffs object.

The proposed supplemental authority is an arbitration decision upholding Coughlin's termination for, among other things, the unbecoming conduct embodied in the emails. See Supplemental Authority Motion, Exhibit B (the "Arbitration Decision"). The Supplemental Authority Motion is being allowed, but the court is not considering the Arbitration Decision for purposes of the motions to dismiss. Assuming, without deciding, that an arbitration decision is an official record of which the court could take notice, see Waterson, 987 F.2d at 3-4, Bouris was not a party to the arbitration and, in any event, the Arbitration Decision does not address the propriety of accessing Bouris's personal account. Indeed, it appears that emails between plaintiffs' personal email accounts were not the basis of the decision. See Arbitration Decision at 21 & n.5 (relying on personal-to-personal email message "only for purposes of credibility"). In any event, the implications of the Arbitration Decision have not been fully briefed.

V. ORDER

In view of the foregoing, it is hereby ORDERED that:

1. The Report (Docket No. 45) is ACCEPTED in part and MODIFIED in part as follows:

    a. The School Committee's Motion to Dismiss (Docket No.

20) is ALLOWED. Counts 5 and 6 are DISMISSED.

   b. Levenson's Motion to Dismiss (Docket No. 22) is ALLOWED in part and DENIED in part. Counts 7 and 8 are DISMISSED. Counts 9 and 10 are DISMISSED except to the extent that they allege unconstitutional harm to plaintiffs' reputations.

   c. Buck's Motion to Dismiss (Docket No. 30) is ALLOWED in part and DENIED in part. Counts 13 and 14 are DISMISSED.

   d. Thielman's Motion to Dismiss (Docket No. 38) is ALLOWED in part and DENIED in part. Counts 11, 12, 16, 31, and 32 are DISMISSED.

   2. Plaintiffs' Motion to Strike Portions of the Reply to Objections by Defendant Nathan Levenson (Docket No. 51) is DENIED.

   3. Defendants' Motion for Leave to File Notice of Supplemental Authority (Docket No. 53) is ALLOWED.

   4. In order to prevent future substantial duplication of effort, the reference of this case to the Magistrate Judge is REVOKED.

   5. This court will conduct a Scheduling Conference on January 24, 2012, at 3:00 p.m. The parties shall respond to the attached Notice of Scheduling Conference.

         /s/ Mark L. Wolf
        UNITED STATES DISTRICT JUDGE